# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

MARK OKRASINSKI,                )
                                )
      Plaintiff,            )
                                )
  v.                            )    05 cv 5813
                                )    Magistrate Judge Susan E. Cox
JO ANNE BARNHART,               )
Commissioner of Social Security,)
                                )
      Defendant.            )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Mark Okrasinski ("plaintiff") appeals the Commissioner ("Commissioner") of Social Security's denial of disability insurance benefits ("DIB") for his testicular pain, right hip impairment, and continuing impairment associated with a kidney transplant. Plaintiff seeks review of the administrative law judge's (ALJ) determination that plaintiff's claims are "somewhat credible," and the determinations that followed from that decision. For the reasons set forth below, and findings consistent with this opinion, this case is remanded for a new hearing.

**I.    Background**

Plaintiff was a 42 year old male at the time he applied for DIB. (R. 11.) Plaintiff has a history of medical disability and was receiving DIB in 1993 after being diagnosed with immuno-globulin A nephropathy, a disease of his right kidney, which eventually led to plaintiff receiving a kidney transplant. (R.112.) Between late 1997, or early 1998, plaintiff underwent surgery (hydrocele repair) to relieve complaints of right testicular pain. (R. 291.) On February 2, 1999,

1

plaintiff had a surgical procedure for replacement of his left hip. (R. 13.) In September 2004, plaintiff was diagnosed with fractures and complained of pain in his right hip. (R. 293.) Since the 1998 hydrocele surgery, plaintiff's treating physician, Susan Hou, M. D., has prescribed Vicodin for relief of pain in his right testicle. (R. 292.)

Plaintiff's work history, before his kidney transplant, was limited to delivery jobs that consisted of driving to local businesses and loading and unloading his truck. (R. 315.) From July 9, 1993 until January 2002, plaintiff received DIB for his kidney transplant. (R. 11.) Upon review by the Social Security Administration ("SSA"), benefits ceased and plaintiff returned to the delivery business and attempted to work for the next 18 months. (R. 299.) Plaintiff worked as an outside contractor delivering spices for the Schreiber Spice Company. (R. 289.) After several months, plaintiff described decreasing ability to drive, due to increasing pain in his groin, specifically, his right testicle, and side-effects caused from his use of pain relievers. (R. 304.) According to plaintiff, the pain was exacerbated by long intervals of sitting and by the jostling motion of the truck when he was driving. (R. 301.) Plaintiff also believed that the pain reliever that he was using, Vicodin, made him drowsy and unable to drive safely. (R. 291.) Additionally, plaintiff found it increasingly difficult to load and unload his truck due to pain associated with his hip, back and generalized joint pain. (R. 298.) By the ninth month after returning to work, plaintiff started to pay high school students to do this part of his job. (R. 300.) Due to pain, after 18 months plaintiff ceased working and reapplied for DIB. (R. 300.)

## II.  Procedural History

Based upon an application filed on July 9, 1993, plaintiff received DIB for a kidney transplant. (R. 11.) Those benefit payments ceased January 2002, when it was determined by the

SSA that he was no longer disabled. (R.11.) On April 25, 2003, plaintiff filed an application for DIB, the application at issue here. *Id.* On June 26, 2003 plaintiff's application was denied. (R. 27.) On June 30, 2003, plaintiff filed for reconsideration. (R. 31.) On August 11, 2003, plaintiff's request for reconsideration was denied. (R. 32.) On September 16, 2003, plaintiff filed for a hearing. (R. 36.) On October 28, 2004, the hearing was held and the ALJ, John Kraybill, issued a decision denying plaintiff benefits. (R. 8.) On May 9, 2005, plaintiff filed a request for review by the Appeals Council. (R. 266.) On August 19, 2005, the Appeals Council denied plaintiff's request for review. (R. 4.) On October 11, 2005, plaintiff then filed the present complaint.

## III. Standard for Benefits (5 Steps)

There are five steps to determining if a claimant is disabled and the ALJ must consider those steps sequentially. *See* 20 CFR § 1520(a). The first four steps are the responsibility of the claimant to prove. *See* 20 CFR § 1520(a). The responsibility then shifts to the SSA in proving the fifth and final step. *Id.* At any of the first four steps, if claimant is found to be without disability, the process stops and claimant is denied DIB. *Id.* At step five, the SSA must articulate its reasons for denial of DIB, if that is it's finding. *Id.*

In step one, if claimant is performing substantial gainful work, then claimant is not disabled. *Id.* In step two, if claimant is not performing substantial gainful work then claimant's impairment(s) must be "severe" before claimant can be found to be disabled. *Id.* In step three, if claimant is not performing substantial gainful work and has a severe impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and claimant's impairment (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, then claimant is presumed disabled without further

inquiry. *Id.* In step four, if claimant's impairment(s) does not prevent claimant from doing past relevant work, claimant is not disabled. *Id.* In step five, even if the impairment(s) prevent claimant from performing past relevant work, if other work exists in significant numbers in the national economy that accommodates claimant's residual functional capacity and vocational factors, claimant is not disabled. *Id.*

## IV. Evidence Presented At Plaintiff's Hearing

At the hearing on October 28, 2004, the ALJ asked about plaintiff's medical history and how his past surgeries were affecting his quality of life in general and his ability to work. (R. 288-298.) Plaintiff testified that he returned to work as an owner and operator of a truck and delivered spices to 12 to 18 local businesses per day. (R. at 289-290.) Plaintiff spoke of pain in his right testicle and testified he uses Vicodin to control that pain. (R. 291.) Plaintiff also testified about a surgical option, which would be another attempt at hydrocele repair. (R. 290-291.) Plaintiff testified about his experience of hydrocele surgery to fix this particular problem and described how it did not help in his circumstance. (R. 292.) Further, since there is only a 50% chance that another hydrocele procedure would eliminate the pain, plaintiff testified that he previously declined that option. (R. 292.) Plaintiff testified that his hip replacement was healing, but spoke of soreness and limitations in how often he could use it. (R. 294.) Plaintiff highlighted the fact that since his kidney transplant, he was no longer able to take pain relievers, such as Tylenol or Advil, because of how dangerous they were to his transplanted kidney. (R. 307.) Plaintiff noted that if he was not limited to Vicodin, other pain relievers would work better in controlling pain and inflammation. (R. 304, 307.)

The ALJ then asked plaintiff about his daily routines at home. Plaintiff spoke of problems

4

sleeping through the night, getting between four and five hours per night, even after taking pain medication. (R. 294.) During the day, when awake, plaintiff testified that he would prepare meals for himself and, when possible, sit for about 15 to 20 minute stretches. (R. 294, 295.) Mostly though, plaintiff testified that he would lay down to decrease the amount of pain he would experience throughout the day. (R. 294.) Additionally, plaintiff stated that he would also sleep during the day to make up for the sleep he did not get at night. (R. 305.) Plaintiff also testified that he could: (1) stand for about 15 minutes (R. 295.); (2) walk around the house from room to room (R. 296.); and (3) lift 10 to 15 pounds and carry it short distances (R. 296.). Plaintiff testified that he was also warned to refrain from physical exercise by his physician, Mark Hopkinson, M. D. (R. 297.)

Finally, the ALJ questioned plaintiff as to the frequency he experienced pain. Plaintiff answered that it was constant and in varying degrees of intensity. (R. 295.) Plaintiff explained that he experienced pain in his right testicle for the last six years, pain in his hip for the last six months, and pain in his lower back, also, for the last six months. (R. 297.)

Plaintiff's counsel then questioned plaintiff about the specifics of his pain, his ability to control that pain, and his surgical options to eliminate pain. (R. 299-310.) Plaintiff testified that his pain level at the hearing was a nine on a scale of one to ten, with ten being the highest level. (R. 305.) Plaintiff then reiterated that he rejected the option for another hydrocele procedure. (R. 303.)

The ALJ then questioned the Vocational Expert ("VE"), Ms. Cheryl R. Hoiseth. (R. 313.) The VE testified as to what plaintiff was qualified to do, based upon the record and his testimony at the hearing. (R. 313.) Ms. Hoiseth testified that based on plaintiff's age, past work experience,

and schooling, he was in the category of heavy skilled work. (R. 316.) She further testified that the only transferable skills would be to a lighter driving job. (R. 316.) The ALJ asked no further questions of the VE, and the VE provided no specifics as to how many jobs might be available in the economy.

V.      **Analysis**

Plaintiff argues the ALJ erred in finding that: (1) plaintiff was "somewhat credible" in describing his limitations; (2) plaintiff has the ability to perform sedentary work; and (3) as defined in Section 404 of the Social Security Act, plaintiff was not "under a disability" at any time to decision. *See* 20 C.F.R. § 404.1520(g).

A.      **Standard Of Review**

In reviewing the ALJ's decision, the court may not decide the facts, reweigh the evidence, or substitute its own judgment for that of the ALJ. *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir.1994). Where conflicting evidence allows reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the courts. *Herr v. Sullivan,* 912 F.2d 178, 181 (7th Cir.1990); *see also Stuckey v. Sullivan,* 881 F.2d 506, 509 (7th Cir.1989) (the ALJ has the authority to assess medical evidence and give greater weight to that which he finds more credible). Rather, the Court must accept findings of fact that are supported by "substantial evidence," where substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 42 U.S.C. § 405(g); *Herron,* 19 F.3d at 333 (*quoting Richardson v. Perales,* 403 U.S. 389, 401 (1971)).

This does not mean, however, that the Commissioner or the ALJ is entitled to unlimited judicial deference. An ALJ must sufficiently articulate his assessment of the evidence to "assure

us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning." *Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir.1993). When the ALJ fails to mention rejected evidence, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Zblewski v. Schweiker,* 732 F.2d 75, 79 (7th Cir.1984) (*quoting Cotter v. Harris,* 642 F.2d 700, 705 (3d Cir.1981) and holding that such explanation is "absolutely essential for meaningful appellate review").

Further, although the court does not require a written evaluation of every piece of testimony and evidence submitted, a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position. *Zblewski,* 732 F.2d at 78-79. And finally, the evidence supporting the agency's decision must be substantial "when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the [agency's] view."*Id.* at 78 (*quoting Universal Camera Corp. v. N.L.R.B.,* 340 U.S. 472, 477-78 (1951)) (stating where substantial evidence in favor of the agency's decision cannot be determined in isolation from the aggregate record).

B. ALJ's Determinations

1. Plaintiff was "Somewhat Credible"

The Court agrees with plaintiff that "the ALJ inadequately explained why he discredited the claimant's own testimony." *Steele v. Barnhart,* 290 F3d 936 (7th. Cir. 2002). The ALJ's conclusion that plaintiff's allegation's regarding his limitations are "somewhat credible," is not supported by the evidence within the record. (R. 15.) In his written opinion, the ALJ "notes that in spite of claimant's pain, he started a home remodeling project in October 2003... and was able to work 18 months doing heavily skilled work." (R. 13.) This statement is confusing and leads one

7

to assume that plaintiff did heavy skilled work for a continuous 36 months, because it combines two different facts. Plaintiff did, in fact, attempt a home remodeling project which, according to the record, sent him to his physician for pain relief. (R. 164.) The second part of this statement refers to plaintiff's attempt at work, which the record shows ended within 18 months due to pain. (R. 289-290.) When reviewing the record and reading the ALJ's statement as written, a reasonable person would conclude that plaintiff worked for 18 months, and then did remodeling for another 18 months. This conclusion naturally undermines plaintiff's credibility, as the ALJ in fact determined, because plaintiff seems to be doing two different types of heavy skilled labor for an extended period of time.

When the ALJ's statement is read as two facts instead of one, however, it is clear that plaintiff's complaints of pain, his medical history, and his work history are consistent with his testimony at the hearing. According to the Social Security Rulings ("SSR"), when an ALJ rules on the credibility of a claimant, the ALJ must give a detailed explanation of how he came to that decision. The ALJ's decision must,

> contain specific reasons for the finding on credibility, supported by the evidence in the case record and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

*See* SSR 96-7p (July 2, 1996). The ALJ does not provide a reason for his ruling on plaintiff's credibility within the opinion issued, other than citing to a jumbled work and home remodeling history. Without a more well reasoned determination, the Court must find that the ALJ erred in finding that plaintiff was "somewhat credible." Because credibility is a factor in the ALJ's subsequent determinations on plaintiff's RFC and plaintiff's disability, the Court must also review

those determinations.

## 2. Plaintiff's RFC

The ALJ next determined that plaintiff could perform sedentary work. Again, the record does not clearly support that finding. Upon review of the record, the Court finds that plaintiff's abilities declined from year to year. For example, the plaintiff's physician determines in an RFC filled out in August of 2003, that plaintiff can: (1) occasionally lift and/or carry 50 pounds; (2) frequently lift and/or carry 25 pounds; (3) stand and/or walk (with normal breaks) for a total of about 6 hours in an 8 hour workday; (4) sit (with normal breaks) for a total of about 6 hours in an 8 hour workday; (5) push and/or pull unlimited, other than as shown for lift and/or carry. (R. 137.) A subsequent physical assessment form completed by William Hopkinson, M.D., dated January 25, 2005, portrays plaintiff with increasing physical limitations. (R. 176-182.) This assessment noted that plaintiff can: (1) occasionally lift and or carry 20 pounds; (2) frequently lift and/or carry 10 pounds; (3) stand and/or walk (with normal breaks) for a total of about 2 hours in an 8 hour workday; (4) sit, push, and pull are not affected by this impairment. (R. 179-181.) Dr. Hopkinson opined that plaintiff has chronic sciatica and noted his past hip replacement. (R. 180.) Dr. Hopkinson also indicated plaintiff is a renal transplant patient on chronic prednisone and immuno-suppressives. (R. 180.) Finally, Dr. Hopkinson found that postural activities that plaintiff should never attempt are: (1) climbing; (2) kneeling; (3) crouching; (4) crawling; and (5) stooping. (R.179-180.) On June 20, 2005, Dr. Hopkinson wrote, "I feel that the multitude of problems due to Mark's renal disease, DJD of the lumbar spine and arthritis of the right hip cause him to be completely disabled from any job activities, especially those requiring prolonged sitting or standing and any lifting. This disability is permanent." (R. 281.)

9

Plaintiff also testified at the hearing that his pain levels have increased and it has affected his ability to work as well as, sit, stand, or walk for extended periods of time, which is consistent with the record in general. (R. 304, 305.) Because there is a question of credibility regarding plaintiff's limitations, reopening the record to develop a current RFC for plaintiff should resolve this question without prejudice to the SSA.

### 3. Plaintiff was not Under a Disability

In the ALJ's written opinion, he determined that plaintiff's impairments, "do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4". (R. 15.) Although true, this determination is only one part of what an ALJ looks at before he decides if a person is disabled and, this determination alone, does not disqualify plaintiff from seeking DIB. *See* 20 CFR § 404.1520. The ALJ, citing to the rules in his written opinion, stated that he must consider, "all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR § 404.1529, and Social Security Ruling 96-7p." (R. 13.) Because the ALJ based some of the "other evidence" on plaintiff's credibility, and the Court finds error in the ALJ's credibility determination, the question of whether plaintiff was under a disability must be re-examined within the context of a new hearing.

## VI. Conclusion

The Court finds that the ALJ erred in determining that plaintiff was "somewhat credible." Additionally, the Court finds that the ALJ's determinations on plaintiff's RFC and whether plaintiff was under a disability, must be reviewed due to the relationship between those

determinations and the issue of credibility. For the reasons set forth above, the Court remands this case back to the ALJ for a new hearing.

**IT IS SO ORDERED.**

                                        U.S. Magistrate Judge
                                        Susan E. Cox

Date: February 15, 2008